**Reversed and Remanded and Opinion Filed August 27, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00249-CV

**ASPEN STRATEGIC HOLDINGS, LLC, DERIVATIVELY, ON BEHALF OF ABA DSO, LLC, Appellant**
**V.**
**TRANSITUS CAPITAL, L.L.C., JARED R. BEHNKE, AND VICTOR G. BLOEDE, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-16440**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

This is an appeal by Aspen Strategic Holdings, LLC, derivatively and on behalf of ABA DSO, LLC (Aspen), challenging the trial court's Final Judgment, which denied Aspen's First Amended Petition to Confirm the Arbitration Award in this case and granted appellees Transitus Capital, L.L.C., Jared R. Behnke, and Victor G. Bloede's Application to Vacate Arbitration Award.

In four appellate issues, Aspen contends (1) the trial court erred in vacating the Arbitration Award whether its decision was based on findings of (a) evident partiality, (b) the arbitrator's having exceeded his powers, or (c) the arbitrator's

imperfect execution of his powers; and (2) the trial court abused its discretion by quashing Aspen's subpoena for the arbitrator to testify as to the circumstances or reasons for the nondisclosure.

We conclude that Aspen's first issue challenging the evident impartiality finding is dispositive of this appeal. We reverse the trial court's judgment and remand the case for the trial court to reconsider the Arbitration Award by employing the correct standard for evaluating an arbitrator's nondisclosure. In addition, we vacate the trial court's order quashing Aspen's subpoena so the trial court may determine what evidence it requires to apply that standard correctly.

### Background

These parties entered an Engagement Agreement whereby appellees were to provide investment banking services in connection with the sale of Aspen's interest in ABA DSO. Pursuant to that agreement, Aspen filed the underlying arbitration proceeding against appellees with the American Arbitration Association (the AAA) when a dispute arose concerning those services. The arbitration was conducted according to the AAA's Commercial Arbitration Rules. The parties agreed that Jack Selman would serve as their arbitrator after he completed required AAA disclosure forms. Selman oversaw the five-day arbitration and ultimately rendered his Arbitration Award, which provided that Aspen should recover more than $809,000 in damages, attorney's fees, costs, and interest, and appellees should take nothing. Aspen filed this action below to confirm the award.

While Aspen's Petition to Confirm was pending, counsel for appellees discovered that one of Aspen's attorneys for the arbitration, J. Mitchell Little, had previously appeared as counsel in an arbitration in which Selman had served as arbitrator. The earlier arbitration took place in May 2010. Selman was one of a three-member panel; the panel ruled in favor of the claimant in that proceeding and against all four respondents, one of whom was represented by Little.

Before Aspen and appellees' arbitration, Selman had completed the required AAA's General Arbitrator Oath Form, wherein he was asked, "Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?" He answered "NO." On that same form, Selman attested that he had:

> diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Arbitrators in Commercial Disputes, the parties' agreement, and applicable law pertaining to arbitrator disclosures.

Appellees answered Aspen's Petition to Confirm and filed their Application to Vacate, asking the trial court to vacate the award on three grounds: evident impartiality, the arbitrator's exceeding his powers, and the arbitrator's imperfect execution of his powers.

The competing motions were set for hearing together. In the interim, Aspen served a subpoena commanding Selman to appear and testify at that hearing. Before the hearing began, appellees filed a motion to quash the subpoena. Thus, all issues in this appeal were before the trial court at that time.

The court dealt initially with requiring the arbitrator to testify.[1] Appellees argued that both AAA rules and Texas statute forbade a party's calling an arbitrator to testify. *See* AAA Commercial Rule R-52(e); TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(b). Aspen identified Texas cases that included facts from arbitrators in their analysis. The trial court orally granted the motion to quash.

The court then turned to the Petition to Confirm and the Application to Vacate. The judge confirmed with both counsel that Little had in fact appeared in an earlier arbitration before Selman, and he admitted documents from that case that showed Little as counsel of record. Arguments at the hearing focused on appellees' charge of evident partiality; the arguments were the same ones posed in briefing and argument in this Court and are discussed in some detail below. At the close of the hearing, the trial judge stated:

> The Court finds that the arbitrator in this case failed to disclose a prior representation—or a prior arbitration in which one of the parties was represented by an attorney represented in the current arbitration. This failure to disclose that deprived opposing counsel of the opportunity to evaluate whether or not that was of sufficient importance to cause the arbitrator to be disqualified or not.

The judge signed the Final Judgment that same day, vacating the Arbitration Award in its entirety and ordering that the parties "submit their controversy to a

---

[1] Because the motion had not been on file for three days before the hearing, *see* TEX. R. CIV. P. 21(b), the trial judge asked counsel for Aspen on the record if he was "asking the Court to rule on that motion to quash [the] subpoena," and counsel answered "yes."

–4–

rehearing before a new arbitrator to be chosen as provided in their agreement and the American Arbitration Association's rules and procedures."

This appeal followed.

**Discussion**

In its first issue, Aspen argues that the trial court erroneously vacated the award based on evident partiality because appellees presented no evidence establishing the arbitrator's awareness of the nondisclosure or its materiality; in the absence of such evidence, Aspen contends, no objective observer could reasonably conclude that the nondisclosure suggested bias or partiality on the part of the arbitrator.

The trial court did not make formal findings of fact and conclusions of law. It did obtain agreement on the record (which was confirmed in the parties' filings below) that Little had appeared in an arbitration before Selman; we defer to that unchallenged finding of fact that is supported by the evidence. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986). However, we review the court's decision to vacate the award de novo, based on the entire record. *Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). The party seeking to vacate the arbitration award bears the burden of proof of evident partiality. *Mariner Fin. Group, Inc. v. Bossley*, 79 S.W.3d 30, 35 (Tex. 2002).[2]

---

[2] The parties' Engagement Agreement did not specify whether the arbitration would be governed by federal or Texas law, but evident partiality of an arbitrator is a ground for vacating an arbitration award

The Texas Supreme Court first established the Texas standard for determining evident partiality in *Burlington Northern Railroad Co, v. TUCO, Inc.*, 960 S.W.2d 629 (Tex. 1997). Drawing from the Unites States Supreme Court's "seminal case" on this issue, the *TUCO* court held that:

> a prospective neutral arbitrator selected by the parties or their representatives exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality.

*Id.* at 636 (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 147 (1968)). The court went on emphasize that "evident partiality is established from the *nondisclosure itself,* regardless of whether the nondisclosed information necessarily establishes partiality or bias." *Id.* (emphasis in original). And the court clarified that "[w]hile a neutral arbitrator need not disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure." *Id.* at 637. The court consolidated and restated its standard succinctly in *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518 (Tex. 2014):

> In short, the standard for evident partiality in *Commonwealth Coatings* and *TUCO* requires vacating an award if an arbitrator fails to disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality, but information that is trivial will not rise to this level and need not be disclosed.

*Id.* at 525.

---

under both the Federal Arbitration Act and the Texas Arbitration Act. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 519 (Tex. 2014).

The parties before us understand the *TUCO-Tenaska* standard differently. Aspen argues that appellees failed to offer evidence establishing why Selman failed to disclose Little's earlier appearance before him, and it contends that without that evidence, we cannot determine whether the undisclosed relationship is material (i.e., not trivial) and therefore was required to be disclosed. But while Aspen focuses on the standard's disclosure exception for trivial relationships and contacts, appellees point to the supreme court's statement that evident partiality is established "from the nondisclosure itself." They contend that cases following *TUCO* have determined that a failure to disclose an appearance before the arbitrator is always non-trivial, so that if such an appearance occurred and it was not disclosed—as happened here—then evident partiality has been shown by the nondisclosure, and a court need go no further.

Cases in this vein correctly point out the reasons for requiring full disclosures from an arbitrator. *TUCO* cited the Supreme Court's conclusion "that it must be scrupulous in safeguarding the impartiality of arbitrators, because they have "'completely free rein to decide the law as well as the facts and are not subject to appellate review.'" 960 S.W.2d at 633 (quoting *Commonwealth Coatings,* 393 U.S. at 149). *TUCO* warns that "the conscientious arbitrator should err in favor of disclosure." *Id.* at 637. When arbitrators comply with the rule of full disclosure, the role of courts in arbitration is minimized, and control is instead vested in the parties who have chosen to arbitrate. *Id.* Full disclosure "allows the parties to evaluate any

potential bias at the outset, rather than shifting the burden to the courts to do so when a dissatisfied party challenges an award." *Id.* at 635. This is how the system should work.

It is undisputed, though, that full disclosure is not what happened in this case, so the trial court was called upon to apply the *TUCO-Tenaska* standard and to determine whether Selman's nondisclosure required vacatur. We conclude that the trial court stopped too soon in its analysis. It elicited evidence that a failure to disclose had occurred, i.e., the arbitrator had not told the parties that Little had appeared before him in an earlier arbitration. But then the trial court concluded that the arbitrator's failure had "deprived opposing counsel of the opportunity to evaluate whether or not [the earlier appearance by Little] was of sufficient importance to cause the arbitrator to be disqualified or not," and it ordered vacatur. Of course any failure to disclose requested information on the AAA form would deprive a party of the opportunity to evaluate the undisclosed information. But the *TUCO-Tenaska* standard does not suggest that every failure to disclose requires vacatur.

We agree that disclosure rules are intended to allow evaluations of possible conflicts to be "left to the parties." *See TUCO*, 960 S.W.2d at 636 (evaluations of partiality are better left to the parties). However, once a court has identified an arbitrator's failure to disclose, the evaluation is "left" to the objective observer in the *TUCO-Tenaska* standard. The proper question then becomes whether the undisclosed facts might, to that objective observer, create a reasonable impression

–8–

of the arbitrator's partiality. *See Tenaska*, 437 S.W.3d at 525. Application of the standard to the facts of the present case is a necessary step of a trial court's analysis. *See, e.g.*, *TUCO*, 960 S.W.2d 637 ("Finally, we apply this standard to the facts of this case."); *Tenaska*, 437 S.W.3d at 525 ("We next apply the standard for evident partiality to these facts."). Only by evaluating the facts of the specific case can the trial court conclude that the undisclosed facts were sufficiently material to meet the evident impartiality standard. In this case, the trial court did not evaluate the facts surrounding Selman's nondisclosure and draw a conclusion concerning their effect on an objective observer.[3]

We conclude that the trial court applied the incorrect test for evident partiality. We sustain appellant's first issue and remand the case for the trial court to reconsider motions to confirm or to vacate the Arbitration Award under the proper standard.

---

[3] Both parties have cited a number of intermediate appellate cases in their efforts to support their desired outcome here. Given the record before us, we conclude that the relevance of these other cases is limited at this time to reinforcing our conclusion that the *TUCO-Tenaska* evident partiality standard requires evaluation of the undisclosed facts and their effect on an objective observer. *See, e.g.*, *Alim v. KBR (Kellogg, Brown & Root)--Halliburton*, 331 S.W.3d 178, 182 (Tex. App.—Dallas 2011, no pet.) ("We conclude Rosuck's failure to disclose that Graves had previously appeared before him as a party representative of a related entity was a fact that might, to an objective observer, create a reasonable impression of partiality."); *Meritage Homes of Tex., L.L.C. v. Ruan*, No. 05-13-00831-CV, 2014 WL 4558772, at *4 (Tex. App.—Dallas Sept. 16, 2014, pet. denied) (mem. op.) ("Having examined the undisclosed information against what was actually disclosed, we conclude the failure to disclose the one arbitration and one mediation would not yield a reasonable impression of the arbitrator's partiality to an objective observer."). Comparisons to any other aspects of these cases are premature because the trial court has not yet applied the standard correctly to the facts of this case.

In its second issue, Aspen argues the trial court abused its discretion when—at the February 10, 2023 hearing—it orally quashed Aspen's subpoena calling for the arbitrator to testify concerning the circumstances or reasons for the nondisclosure. We are not persuaded that either AAA rules or the Civil Practice and Remedies Code forbids obtaining relevant factual information—as opposed to confidential information about the substance of the arbitration—from an arbitrator. A court must have sufficient evidence to be able to apply the *TUCO-Tenaska* standard and conclude whether an objective observer might form a reasonable impression that the arbitrator was partial.[4] Indeed, the Texas Supreme Court has stated that the evident partiality test "necessarily entails a fact intensive inquiry." *Mariner Fin. Grp.*, 79 S.W.3d at 34 (quoting with approval *Lifecare Int'l, Inc. v. CD Med., Inc.,* 68 F.3d 429, 435 (11th Cir.1995)). In that case, the court concluded that absent evidence of why the arbitrator failed to disclose a relationship, it could not determine whether the undisclosed relationship was material to the issue of evident partiality. *Id.* at 33. And the court was clear: "[u]nder this objective test, the consequences for nondisclosure are directly tied to the materiality of the unrevealed information." *Id.* at 32–33.

---

[4] We stress that well settled law assures that this evidence need not prove actual partiality or bias. *See Tenaska*, 437 S.W.3d at 527. This is what the supreme court means when it says that evident impartiality is established by the nondisclosure itself. *See id*. The necessary facts relate only to the nondisclosure; application of the facts considers their impact on an objective observer.

We conclude that because the trial court did not attempt to apply the facts surrounding the arbitrator's nondisclosure to an objective observer, it did not consider the evidence it would need to make that application. Accordingly, we sustain Aspen's second issue and vacate the trial court's order quashing the subpoena so that the trial court can conclude in the first instance what evidence it requires to determine the materiality of the undisclosed facts in this case.[5]

## Conclusion

For the reasons discussed above, we vacate the trial court's February 10, 2023 oral order granting appellees' motion to quash the subpoena calling for the arbitrator's testimony. We reverse the trial court's Final Judgment and remand the case for further proceedings consistent with this opinion.

230249f.p05

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

---

[5] Because of our disposition of Aspen's first two issues, we need not address its remaining issues.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ASPEN STRATEGIC HOLDINGS,
LLC, DERIVATIVELY, ON
BEHALF OF ABA DSO, LLC,
Appellant

No. 05-23-00249-CV    V.

TRANSITUS CAPITAL, L.L.C.,
JARED R. BEHNKE, AND
VICTOR G. BLOEDE, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-16440.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Aspen Strategic Holdings, LLC, Derivatively, on behalf of ABA DSO, LLC recover its costs of this appeal from appellees Transitus Capital, L.L.C., Jared R. Behnke, and Victor G. Bloede.

Judgment entered this 27th day of August, 2024.